# EXHIBIT A

MAR-02-2005 15:34   ORBCOMM   7034336390   P.03/34

FILED
2005 FEB 24  PM 3:49
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER (State Bar No. 26202)
DONALD R. PEPPERMAN (State Bar No. 109809)
611 West Sixth Street, 20th Floor
Los Angeles, California 90017-3120
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiff
QUAKE GLOBAL, INC.

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

QUAKE GLOBAL, INC., a California corporation,

  Plaintiff,

vs.

ORBCOMM LLC, a Delaware limited liability company; STELLAR SATELLITE COMMUNICATIONS, LTD.; and DELPHI CORPORATION, a Delaware corporation,

  Defendants.

CASE NO. V05 1410 RGK (CWx)

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:

(1) VIOLATION OF SECTION 7 OF THE CLAYTON ACT AND SECTION 2 OF THE SHERMAN ACT;
(2) BREACH OF CONTRACT;
(3) INTENTIONAL INTERFERENCE WITH ACTUAL CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE; AND
(4) VIOLATION OF SECTION 1 OF THE SHERMAN ACT AND SECTION 3 OF THE CLAYTON ACT

[DEMAND FOR JURY TRIAL]

Plaintiff, demanding trial by jury, complains and alleges as follows:

## I.
### JURISDICTION AND VENUE

1. Count One of this Complaint is an action to recover damages pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) and to secure

-1-

injunctive relief pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) for defendants' violations of Section 2 of the Sherman Act (15 U.S.C. § 2) and Section 7 of the Clayton Act (15 U.S.C. § 18).

2. Each defendant transacts business and is found within the Central District of California.

## II.

## THE PARTIES

3. Plaintiff QUAKE GLOBAL, INC. ("QUAKE GLOBAL"), is a corporation organized and existing under the laws of the State of California with its principal place of business at 9765 Clairemont Mesa Boulevard, San Diego, California 92124-1324. Founded in 1998, QUAKE GLOBAL designs, manufactures and markets rugged mobile satellite communications products, principally modems, for asset tracking and remote monitoring applications. QUAKE GLOBAL products are designed to utilize the network of low earth orbit satellites developed and operated by ORBCOMM, LLC.

4. Defendant ORBCOMM, LLC ("ORBCOMM"), is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 21700 Atlantic Boulevard, Dulles, Virginia 20166. ORBCOMM operates a low earth orbit satellite service system, identified by the International Telecommunications Union as "LEOTELCOM 1," that provides satellite-based data communications services. In February 2004, SES Global, an international corporation engaged inter alia in the manufacture of satellites, with headquarters in Luxembourg, acquired a 10.5% interest in ORBCOMM. ORBCOMM's principal activity is to provide the "air time" which connects an end user's modem to ORBCOMM's satellite.

-2-

1  5. Defendant STELLAR SATELLITE COMMUNICATIONS, LTD., ("STELLAR") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 21700 Atlantic Boulevard, Dulles, Virginia 20166, the same address as defendant ORBCOMM. ORBCOMM, directly or indirectly, has acquired ownership and control of defendant STELLAR and ORBCOMM's management is in charge of STELLAR. Like plaintiff, STELLAR designs and manufactures data communications products, principally modems, for use on the ORBCOMM system. STELLAR was formed in 1996 and was, until about May 2003, owned and controlled by an Israeli entity.

6. Defendant DELPHI CORPORATION ("DELPHI") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 5725 Delphi Drive, Troy, Michigan 48098-2815. Since it was spun off from General Motors in 1999, DELPHI remains the world's largest manufacturer of auto parts, but manufactures energy, engine management and communications systems.

III.

## THE TRANSACTION

7. Since its formation in 1996 and through about April 2003, defendant STELLAR was part of an Israeli enterprise and a direct competitor of plaintiff QUAKE GLOBAL in soliciting end user customers for satellite communication through the ORBCOMM system. During the course of this competition, QUAKE GLOBAL was far more successful than STELLAR and provided the modems necessary to utilize the ORBCOMM system to the largest share of ORBCOMM's end user customers.

8. Although it has never been announced publicly so far as plaintiff can ascertain, plaintiff is informed and believes and thereupon alleges that in either 2003 or 2004 defendant ORBCOMM acquired, directly or

- 3 -

indirectly, the ownership and management control of defendant STELLAR. Plaintiff contends that this transaction, and subsequent conduct, violate Section 2 of the Sherman Act (15 U.S.C. § 2) and Section 7 of the Clayton Act (15 U.S.C. § 18).

## IV.

## NATURE OF TRADE AND COMMERCE

9. Low earth orbit satellites have made affordable mobile and remote global communication. Entire networks of these relatively inexpensive communications satellites continually orbit the earth at an altitude of 400-600 miles and, utilizing sophisticated transceivers, provide worldwide coverage used mainly for asset tracking, monitoring and communication.

10. The relevant product market in this case is modems to be utilized with ORBCOMM's network of low earth orbit satellites. The relevant geographic market is the United States as a whole.

11. The modem is the device attached to the unit being tracked by the satellite system (trucks, tractors, meters, containers, reefers and trailers) which communicates with a monitoring station through the ORBCOMM satellite. Modems range in price from about $175 to $800 per unit, depending on quantity.

12. While there exist competitive low earth orbit satellite networks with which ORBCOMM competes affording consumers an initial choice of system, once a customer commits to the ORBCOMM system it becomes "locked-in" to expand its utilization because it must purchase modems compatible with the ORBCOMM system. Modems compatible with the ORBCOMM system cannot interface with the hardware and software of other low earth orbit satellite systems and the modems of those other systems will not work on the ORBCOMM system. Accordingly, an end user who elects the ORBCOMM system initially begins with the purchase

- 4 -

1  of a relatively small quantity of modems and then, when satisfied that the
2  system works efficiently and is productive for the end user, a decision is
3  made to purchase usually a much larger quantity of modems. In
4  connection with all subsequent purchases, the end users initially selecting
5  the ORBCOMM system are "locked into" the ORBCOMM system and have
6  no choice but to secure modems which operate with the ORBCOMM
7  system. No non-ORBCOMM modem is reasonably interchangeable with a
8  modem made to operate on the ORBCOMM system. Finally,
9  manufacturers of modems for the ORBCOMM satellite system have
10 invested substantial sums to perfect the technology for the ORBCOMM
11 system. This technology cannot be transferred to another satellite system.
12      13. At one time, there were four competitors in the business of
13 manufacturing and selling ORBCOMM compatible modems and related
14 equipment to ORBCOMM end users: Scientific Atlantic, Panasonic,
15 STELLAR and QUAKE GLOBAL. When Scientific Atlantic and Panasonic
16 decided to withdraw from this market, it left end users to choose between
17 STELLAR and QUAKE GLOBAL. In this time frame, Panasonic was
18 unwilling to invest the capital necessary to develop new ORBCOMM
19 compatible products, STELLAR did not have the capital necessary to do so
20 and only QUAKE GLOBAL was able to and did invest large sums of capital
21 in new state-of-the-art modems for use on the ORBCOMM system. And
22 although the relationship between QUAKE GLOBAL and ORBCOMM was
23 often strained, ORBCOMM recognized QUAKE GLOBAL as its "partner"
24 and that ORBCOMM's competitive status depended largely upon QUAKE
25 GLOBAL's ability to provide state-of-the art, price competitive modems to
26 end users. Indeed, ORBCOMM continually encouraged QUAKE GLOBAL
27 to develop new and better products asserting the investment necessary to
28 do so would be jusitified.

Printed on Recycled Paper

14. In or about April 2003, QUAKE GLOBAL confronted ORBCOMM management with its acquisition, directly or indirectly, of STELLAR. ORBCOMM even to this day has made no public acknowledgment that it owns STELLAR. ORBCOMM has only acknowledged its interest in saving STELLAR as a competitive enterprise so its end users would have a competitive choice of modems. ORBCOMM has assured QUAKE GLOBAL that it intends "to maintain our evenhanded approach" in which presumably it would remain neutral in the competition between STELLAR and QUAKE GLOBAL. ORBCOMM has acknowledged only that it intended to ensure that STELLAR was purchased and operated by an entity independent of ORBCOMM. In fact just the opposite has occurred. STELLAR has moved its offices and facilities into ORBCOMM's facilities and they now share a common address, common management, common engineering staff and common sales and marketing employees.

15. In or about July 2002, after ORBCOMM emerged from bankruptcy, during which its prior agreements were abrogated, ORBCOMM and QUAKE GLOBAL executed a "Mutual Non-Disclosure Agreement" under which QUAKE GLOBAL disclosed proprietary information to ORBCOMM concerning its designs and technical specifications for existing and newly developed products.

16. QUAKE GLOBAL has invested more than $15,000,000 in the development of designs and in the production of modems and related products utilized solely on the ORBCOMM satellite communications system. This huge capital expenditure, coupled with ORCOMM's vertically integrated relationship with STELLAR and ORBCOMM's delegated regulatory authority to approve new modems for use on its system, constitute heightened barriers of entry which make it likely that no new entrant will challenge the ORBCOMM/STELLAR vertical relationship.

- 6 -

17. Given the similarities observable in STELLAR's "new" product line and QUAKE GLOBAL's developed technology, plaintiff believes and thereupon alleges that ORBCOMM has breached the nondisclosure agreement by disclosing QUAKE GLOBAL's proprietary information to STELLAR, or believing that STELLAR is now the same as ORBCOMM, that STELLAR has a right to use such information in competition with QUAKE GLOBAL.

18. The vertical integration of ORBCOMM and STELLAR is exacerbated by the fact that the Federal Communications Commission has delegated to ORBCOMM the right to certify new modems for use on its system. Accordingly, with a vested interest in STELLAR, ORBCOMM now has an economic incentive to refrain from certifying new QUAKE GLOBAL products for use on its system. Yet, ORBCOMM has refused to recuse itself from this certifying function.

19. On October 18, 2004, DELPHI, a former unit of General Motors Corporation, and now an independent manufacturer of mobile electronics and transportation component systems located in Troy, Michigan, announced that it had an order to develop and manufacture the next generation of transceivers modems for STELLAR in the amount of $100,000,000. This huge order reflects that ORBCOMM has no further need for QUAKE GLOBAL's products in its system and creates an enormous incentive to actually eliminate QUAKE GLOBAL as a competitor to STELLAR. Plaintiff believes that DELPHI has had access to QUAKE GLOBAL's proprietary information because published specifications and a picture of the new models bear an uncanny resemblance to QUAKE GLOBAL's products.

20. ORBCOMM has utilized its vertically integrated position to further disadvantage, perhaps fatally, QUAKE GLOBAL. Because

Printed on Recycled Paper

1  ORBCOMM makes a substantial profit selling air time, it is able to use
2  STELLAR's modems as "loss leaders" and is now offering those modems
3  to end users either without charge or at prices that are below its cost,
4  through the device of offering customers a "bundled" price in which the
5  modem operates as the loss leader.
6    21. In addition, ORBCOMM/STELLAR is now telling customers that
7  QUAKE GLOBAL's prices are higher than industry standards, that QUAKE
8  GLOBAL is small and unstable and that QUAKE GLOBAL will not be able
9  sustain its business in the long term.
10    22. ORBCOMM's acquisition of STELLAR, either directly or
11 indirectly, has already and will likely continue to result in substantially less
12 competition in the manufacture, sale and distribution of modems and
13 related products for the ORBCOMM system.
14    23. ORBCOMM has undertaken the acts described herein with the
15 specific intent of monopolizing the manufacture, sale and distribution of
16 modems and related products utilized on its satellite communications
17 system. Because STELLAR may survive as the sole or dominant provider
18 of those products, there is a dangerous probability that such
19 monopolization will actually occur.

## COUNT ONE
## (SECTION 7 OF THE CLAYTON ACT
## AND SECTION 2 OF THE SHERMAN ACT)
(Against Defendants ORBCOMM and STELLAR Only)

V.

## VIOLATIONS ALLEGED

24. The actual and likely continued effect of ORBCOMM's acquisition, directly or indirectly, of STELLAR, has been and will continue to substantially lessen competition and to create a monopoly in interstate

- 8 -

trade and commerce in the United States for modems and related products utilized in the ORBCOMM satellite communication system, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

25. The aforesaid acquisition, taken together with the bundled pricing, the predatory pricing, the de facto exclusive dealing arrangement evidenced by the DELPHI arrangement and ORBCOMM's ability to refuse to certify new QUAKE GLOBAL products constitute monopolization and attempted monopolization of the modems and related products utilized for communication on the ORBCOMM satellite system, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

26. Unless the Court orders a divestiture of the assets acquired from STELLAR by ORBCOMM and/or the reconstitution of a competitive entity, the following effects are likely to occur and/or continue to exist:

(a) actual and potential competition between STELLAR and QUAKE GLOBAL will be eliminated in the United States and STELLAR will emerge with monopoly power;

(b) in the long term, prices are likely to rise;

(c) the incentive to innovate and improve products will be reduced; and

(d) end users utilizing the ORBCOMM satellite communications system will be (1) intimidated by ORBCOMM, (2) deprived of a choice of modem vendors and (3) forced to deal with STELLAR.

(e) ORBCOMM's end user customers are sometimes protected by ORBCOMM promising not to allow competitors of its end user customers on its system.

///
///
///

Printed on Recycled Paper

## VI.

## INJURY TO PLAINTIFF

27. By reason of the foregoing, plaintiff has suffered antitrust injury, i.e., injury resulting directly from a reduction in the vigor of the competitive process in the manufacture, sale and distribution of modems and related products utilized in the ORBCOMM satellite communications system. This injury consists of being foreclosed from the opportunity of competing in the aforesaid relevant product market and continuing to operate as a competitive force in that market. As a result, plaintiff has been and will continue to be deprived of the revenues and profits that it would otherwise have earned in the competitive process. In addition, but for the illegal merger and the subsequent monopolizing conduct, the value of QUAKE GLOBAL's enterprise as a going concern would have continued to increase, whereas now its business has a vastly reduced value because it is in danger of being put out of business as a result of the vertical integration of ORBCOMM and STELLAR. Plaintiff does not now know the exact amount of the damages caused by the conduct described in this Count, but believes such damages to exceed $15,000,000.

## COUNT TWO

## BREACH OF CONTRACT

### (Against Defendants ORBCOMM and STELLAR Only)

28. Count Two of this Complaint is based, in part, on the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the claim set forth herein is ancillary to the federal antitrust claims set out in Count One and arises from the same transactions and from a common nucleus of operative facts. The Court also has jurisdiction over this Count Two pursuant to 28 U.S.C. § 1332 because of the diversity of citizenship of the parties and because the claims exceed the sum of $75,000.

Printed on Recycled Paper

29. Plaintiff QUAKE GLOBAL incorporates by reference the allegations of paragraphs 2 through 27, inclusive, with the same force and effect as though set forth in full herein.

30. Plaintiff has performed all of the covenants and conditions on its part required under the terms of its Mutual Non-Disclosure Agreement with defendant ORBCOMM.

31. ORBCOMM has breached both its express contractual obligations and the implied covenant of good faith and fair dealing contained in the Mutual Non-Disclosure Agreement by acquiring, directly or indirectly, STELLAR and then disclosing to STELLAR and/or DELPHI confidential design and technical information belonging to plaintiff QUAKE GLOBAL.

32. The foregoing constitutes a material and substantial breach of the entire nondisclosure contract and acts as a repudiation of that entire contract.

## COUNT THREE
## INTENTIONAL INTERFERENCE WITH ACTUAL CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE
(Against Defendants ORBCOMM and STELLAR Only)

33. Count Three of this Complaint is based, in part, on the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because the claim set forth herein is ancillary to the federal antitrust claims set out in Count One and arises from the same transactions and from a common nucleus of operative facts. The Court also has jurisdiction over this Count Three pursuant to 28 U.S.C. § 1332 because of the diversity of citizenship of the parties and because the claims exceed the sum of $75,000.

///
///

Printed on Recycled Paper

34. Plaintiff QUAKE GLOBAL incorporates by reference the allegations of paragraphs 2 through 32, inclusive, with the same force and effect as though set forth in full herein.

35. Plaintiff has established a valuable business relationship with its existing customers, including but not limited to Itron Gas (to which ORBCOMM's Executive Vice President Marc Eisenberg sent a confidential QUAKE GLOBAL e-mail in violation of the above-described Mutual Non-Disclosure Agreement) and General Electric Tips, and had a reasonable expectancy of continued patronage by such customers.

36. Defendants ORBCOMM and STELLAR were aware of plaintiff's valuable economic relationship with its existing customers and potential future customers.

37. Notwithstanding their awareness of the unique value of QUAKE GLOBAL's economic relationship with its existing and potential future customers, ORBCOMM violated Section 7 of the Clayton Act by acquiring, directly or indirectly, the assets of STELLAR and, then vertically integrating so as to operate as a single entity using bundled and below cost pricing as alleged above.

38. Defendants' conduct as described in this Count Three was fraudulent, malicious and oppressive and entitles QUAKE GLOBAL to recover punitive damages from each defendant in an appropriate amount to be assessed at trial.

///
///
///
///
///
///

Printed on Recycled Paper

## COUNT FOUR
## (SECTION 1 OF THE SHERMAN ACT AND SECTION 3 OF THE CLAYTON ACT)
## (EXCLUSIVE DEALING ARRANGEMENT)
### (Against All Defendants)

39. Count Four of this Complaint is an action to recover damages pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15) and to secure injunctive relief pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) for defendants' violations of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14).

40. Plaintiff QUAKE GLOBAL incorporates by reference the allegations of paragraphs 2 through 38, inclusive, with the same force and effect as though set forth in full herein.

41. The allegations of Paragraph 19 constitute an exclusive dealing arrangement which has substantially lessened competition and is likely to continue to substantially lessen competition in the manufacture, sale and distribution of modems utilized in the ORBCOMM satellite communications system in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 14).

## RELIEF REQUESTED

WHEREFORE, plaintiff requests entry of judgment against defendants as follows:

1. That the acquisition of defendant STELLAR by defendant ORBCOMM be adjudged and decreed to violate Section 7 of the Clayton Act and that defendant ORBCOMM be required to divest itself of the assets acquired from defendant STELLAR and to reconstitute a new and effective competitor, excluding DELPHI, and for additional injunctive relief

- 13 -

Printed on Recycled Paper

1. to equalize competition in the manufacture and sale of modems for the ORBCOMM system.

2. That defendant ORBCOMM has breached its Mutual Non-Disclosure Agreement with plaintiff QUAKE GLOBAL and has caused QUAKE GLOBAL damage thereby;

3. That defendants ORBCOMM and STELLAR have intentionally interfered with plaintiff QUAKE GLOBAL's relationship with existing customers and potential future customers and that this interference has been willful, intentional, malicious and oppressive entitling QUAKE GLOBAL to punitive damages;

4. That plaintiff recover treble damages, costs and a reasonable attorneys' fee for the alleged violations of Section 7 of the Clayton Act and Section 1 of the Sherman Act and Section 3 of the Clayton Act;

5. That plaintiff recover all compensatory damages caused by ORBCOMM's breach of contract;

6. That QUAKE GLOBAL recover compensation and punitive damages for defendants' ORBCOMM and STELLAR's intentional interference; and

7. Such other and further relief as may be just and proper.

Dated:  February 24, 2005          BLECHER & COLLINS, P.C.
                                    MAXWELL M. BLECHER
                                    DONALD R. PEPPERMAN


                                    By:_____
                                        MAXWELL M. BLECHER
                                    Attorneys for QUAKE GLOBAL, INC.

- 14 -

MAR-02-2005 15:38   ORBCOMM   7034336380   P.17/34

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury pursuant to the Federal Rules of Civil Procedure, Rule 38(b) (28 U.S.C.), and Local Rule 38-1.

Dated: February 24, 2005   BLECHER & COLLINS, P.C.
MAXWELL M. BLECHER
DONALD R. PEPPERMAN

By: *[signature]*
MAXWELL M. BLECHER
Attorneys for QUAKE GLOBAL, INC.

- 15 -